Gregory W. Kirschenbaum, Esq.
Attorney ID #: 326942021
Phillips & Associates, PLLC
45 Broadway, Suite 430
New York, NY 10006
P: (212) 248-7431
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

------------------------------------------------------------X     Case No.:

WHITNEY HART,

                Plaintiff,

      -against-

THE DEVEREUX FOUNDATION,

              Defendant.

------------------------------------------------------------X

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

Plaintiff, by and through her attorneys, Phillips & Associates, PLLC, upon information and belief,

complains of the Defendant as follows:

## NATURE OF THE CASE

1. Defendant THE DEVEREUX FOUNDATION is a non-profit organization that "changes –

   lives by unlocking and nurturing human potential for people living with emotional, behavioral

   or cognitive differences."[1]   Defendant THE DEVEREUX FOUNDATION allegedly

   accomplishes this by adhering to six "core values," the first of which is "compassion."[2]

   However, as Plaintiff quickly learned, Defendant THE DEVEREUX FOUNDATION's

---

[1] https://www.devereux.org/site/SPageServer/?pagename=Mission

[2] *Id.*

"compassion" is non-existent because employees physically abuse residents, and employees who report such abuse, are retaliated against and terminated.

2. Plaintiff complains pursuant to the Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq.* ("CEPA"), seeking damages to redress the injuries she has suffered as a result of her former employer's whistleblower retaliation, together with unlawful termination.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship, and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

4. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claims occurred within the District of New Jersey.  28 U.S.C. §1391(b).

## PARTIES

5. Plaintiff is a female resident of the State of New Jersey, County of Gloucester.

6. At all times material, Defendant THE DEVEREUX FOUNDATION was and is a foreign non-profit corporation duly existing under the laws of the Commonwealth of Pennsylvania.

6. At all times material, Defendant THE DEVEREUX FOUNDATION was and is a foreign non-profit corporation authorized to conduct business in the State of New Jersey, and which does conduct business in the State of New Jersey.

7. At all times material, Defendant THE DEVEREUX FOUNDATION's principal place of business was and is located at 444 Devereux Drive, Villanova, PA 19085.

2

8. At all times material, Defendant THE DEVEREUX FOUNDATION is funded, licensed, and/or regulated by the New Jersey Department of Human Services ("DHS").

9. At all times material, Plaintiff was an employee of Defendant THE DEVEREUX FOUNDATION.

## MATERIAL FACTS

10. On or about October 18, 2021, Plaintiff began working for Defendant THE DEVEREUX FOUNDATION as a Direct Service Provider at its 954 Chestnut Avenue, Deptford, New Jersey 08096 ("Chestnut location").

11. Throughout Plaintiff's employment, she was also assigned shifts at some of Defendant THE DEVEREUX FOUNDATION's other locations.

12. In fact, on or about November 4, 2021, Plaintiff was assigned to work at Defendant THE DEVEREUX FOUNDATION's 113 Stoneham Drive, Glassboro, NJ 08028 location.  While working there, a resident, Leon (last name currently unknown), who also suffers from a sensory disorder, was wearing a hooded sweatshirt and pacing in the kitchen while clapping his hands. Plaintiff observed her coworker, Reggie (last name currently unknown), **come from behind Leon, grab his hood, and forcibly drag him to his room, which was approximately twenty feet away**.  ("Reggie incident").

13. When Reggie reentered the kitchen, Plaintiff asked, "Why did you do that?"  Reggie coldly replied, "**He's always getting into shit**."

14. Reggie's use of excessive force put Leon in harm's way and Plaintiff reasonably believed was a violation of a law, or a rule or regulation.

15. Later that day, Plaintiff was asked to work another shift, this time at the Chestnut location, to which Plaintiff agreed.  However, while at the Chestnut location, **Plaintiff observed**

3

**additional resident abuse**.

16. In fact, while at the Chestnut location, a resident John (last name currently unknown), asked Plaintiff for hot sauce, which she provided. After John applied the hot sauce, with Plaintiff's supervision, she allowed him to take the bottle of hot sauce to put it away.

17. However, Plaintiff's coworker, Tenaisha (last name currently unknown), entered the room and yelled, "John's not allowed hot sauce." Startled by her voice, John ran towards Tenaisha and struck her in the face with an open hand. In response, Tenaisha **slammed John to the ground and forcibly placed her knee on his stomach**. ("Tenaisha incident"). Tenaisha's response was not in conformity with de-escalation techniques that Defendant THE DEVEREUX FOUNDATION's employee are supposed to use.

18. Tenaisha's use of excessive force put John in harm's way and Plaintiff reasonably believed her actions were a violation of a law, or a rule or regulation.

19. The next morning, Plaintiff text messaged Supervisor, Kay (last name currently unknown), and reported the Reggie and Tenaisha incidents. Specifically, Plaintiff wrote, "Yesterday … **[Reggie] grabbed the young boy in the first floor bedroom by his hoodie out of the kitchen and escorted him out. The young boy was not doing anything but walking around so it was no need to do that** … Also … as [John] was done at the refrigerator the lady who was on shift with me came up the stairs and all of a sudden he went towards her and started hitting her in the face. She pinned him down to the floor with his arms down. John tried to push his hips up and started kicking his legs so I held his legs down. As I did that **she put her knee in his stomach**."

20. Later that day, pursuant to the Stephen Komninos Law, Plaintiff called John's mother and reported the Tenaisha incident to her. John's mother thanked Plaintiff for the call but told her

4

that Kay had called her and said that *Plaintiff* **was the one whom had restrained her son**.

21. Kay falsely reported Plaintiff as the aggressor to John's mother in retaliation for Plaintiff's report of Tenaisha and Reggie's physical abuse, as well as in an attempt to create a pretextual reason for Plaintiff's eventual termination.

22. That same day, Kay falsely accused Plaintiff of leaving residents unattended at the Chestnut location and told her to "go home and await further instructions."

23. On or about November 6, 2021, Kay called Plaintiff to tell her that she could return to work the next day, which Plaintiff did.

24. Yet, on or about November 10, 2021, **a mere six days after Plaintiff reported her coworkers' abuse Plaintiff was issued a write-up for contacting John's mother and reporting the abuse**. *See* Ex. A.

25. Then, on or about November 23, 2021, in further retaliation for Plaintiff's reports of resident abuse, Plaintiff received a letter, **out of the blue**, from Defendant THE DEVEREUX FOUNDATION that placed her on administrative leave due to "an allegation of Physical abuse." Plaintiff immediately called Human Resources Manager, Danielle Zwickler, and was told that an unidentified resident accused Plaintiff of abuse and that the administrative leave was "standard procedure." Ms. Zwickler told Plaintiff, "We'll let you know what determination we make."

26. Defendant THE DEVEREUX FOUNDATION placed Plaintiff on an administrative leave in retaliation for her reports of abuse, to create a pretextual paper trail for her eventual termination, and/or in the hopes that Plaintiff would resign during her administrative leave.

27. Nevertheless, while Plaintiff was suspended, nobody from Defendant THE DEVEREUX FOUNDATION ever spoke to Plaintiff about any "investigation" into allegations that she had

abused residents.

28. Then, on or about January 23, 2022, Ms. Zwickler called Plaintiff, told her that the abuse allegations against her were "unfounded," and assigned Plaintiff to the 515 Lakeview Avenue, Pitman, NJ 08071 ("Lakeview") location.

29. Thus, on or about January 27, 2022, Plaintiff returned to work and reported to the Lakeview location.

30. However, almost immediately upon starting at the Lakeview location, the retaliation continued.

31. For instance, on or about January 30, 2022, Plaintiff's coworker, Mickey (last name currently unknown), whom Plaintiff had not previously met, told Plaintiff, "**Niggas don't even fuck with you like that, nobody likes you and you get on my fucking nerves**!"

32. Over the course of the next few weeks, Plaintiff continued to work without incident.

33. However, on or about March 4, 2022, while at the Lakeview location, Plaintiff's coworker, Karen Washington, told her **that she (Karen) had grabbed a resident, Khalil (last name current unknown), by his neck and slammed him to the floor**. Ms. Washington continued and told Plaintiff, "If he acts up again in the morning, I'll put my hands on him."

34. Ms. Washington's use of excessive force put Khalil in harm's way and Plaintiff reasonably believed it was another violation of a law, or a rule or regulation.

35. Therefore, on or about March 6, 2022, Plaintiff emailed Program Director, Donna Phillips, and reported Ms. Washington's abuse. However, Plaintiff received an "out of office" message and forwarded the email to Program Director, Keinya Collier. Notably, **neither Ms. Phillips, nor Ms. Collier, responded to Plaintiff's email**.

36. Then, on or about March 16, 2022, Director, Robert Anders, granted Plaintiff's request to take Khalil, and another male resident, to a nearby Wawa. While the residents were getting into

the organization's van, coworker, Jay (last name currently unknown), screamed at Plaintiff and said that she did not have permission to go to Wawa. Plaintiff explained that Mr. Anders had given her permission and departed the facility.

37. Later that day, Plaintiff reported Jay's verbal assault to Mr. Anders. In response, Mr. Anders scheduled a meeting for the following day with himself, Plaintiff, and Jay to discuss the incident.

38. Shortly thereafter, Plaintiff wrote on a "D-PBIS Key Card" slip, "After your episode outside the house and multiple times of you giving misinformation, and demands, you are no longer allowed to speak to me at anytime. [Mr. Anders] can tell me what I need to know because your tone is disrespectful" and handed the note to Jay.

39. Then, on or about March 17, 2022, Mr. Anders missed the scheduled meeting with Plaintiff and Jay because of a family emergency.

40. Although the meeting was never rescheduled, Plaintiff continued to work at the Lakeview location.

41. On or about March 18, 2022, Plaintiff took Khalil to his grandmother's house for a "house visit." On their way back from his grandmother's home, Plaintiff realized that Khalil was holding a package of leftover food which contained shell fish, to which Khalil is allergic. Accordingly, Plaintiff pulled over in a nearby parking lot and confiscated the food, which angered Khalil. Khalil then got out of the van and refused to reenter. Eventually, after approximately one hour, Plaintiff convinced Khalil to get back into the van and safely returned him to the Lakeview location. ("Khalil incident"). Plaintiff included the Khalil incident in her shift report.

42. As a result of the Khalil incident, the New Jersey DHS inspected the Lakeview location and

discovered various violations.

43. Then, on or about March 28, 2022, Human Resources Manager, Danielle Zwickler, called Plaintiff and asked, "What happened between you and Jay?"  Plaintiff explained that Mr. Anders gave her permission to take residents to the local Wawa when Jay had yelled at her and said she could not take them.  Ms. Zwickler then asked, "Did you write him a note?"  Plaintiff replied, "Yes, I wrote him a note on a piece of scrap paper."  Ms. Zwickler said, "That was not a piece of scrap paper.  It was a form used to congratulate clients and **you were unprofessional for using it**."  Ms. Zwickler continued and said that she had to speak with her supervisor but that Plaintiff could be terminated because of her earlier write-up.

44. That evening, Plaintiff emailed Ms. Zwickler and "People Operations Director," Michele Price, and wrote, "[Y]ou ended the conversation after you said it was unprofessional to write on the pbis card and hand it to staff.  I used it as scrap paper because I have already tried to talk to him (Jay) about he talks to me.  I have already spoken to Rob … **I've been here since October and I've been in three different homes where I reported abuse, where I've reported unprofessional behavior towards me.  I've protected these clients from staff and I've done my job very well even under the harassment I've been experiencing for the reporting I do**."  Neither Ms. Zwickler nor Ms. Price responded to Plaintiff's email.

45. However, the next day, Ms. Price called Plaintiff and terminated her because she was purportedly "unprofessional" when she wrote the note to Jay.

46. At all times material, Plaintiff reasonably believed that she was reporting physical abuse of Defendant THE DEVEREUX FOUNDATION's residents, and which she reasonably believed was a violation of a law, or a rule or regulation promulgated pursuant to law.

47. On or about March 29, 2022, Defendant THE DEVEREUX FOUNDATION terminated

Plaintiff.

48. Defendant THE DEVEREUX FOUNDATION terminated Plaintiff in retaliation for her reports of physical abuse of Defendant THE DEVEREUX FOUNDATION's residents and/or because the NJDHS audited Defendant and uncovered its violations.

49. As a result of Defendant THE DEVEREUX FOUNDATION's actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, violated, embarrassed, and emotionally distressed.

50. As a result of Defendant THE DEVEREUX FOUNDATION's discriminatory and intolerable treatment of Plaintiff, she suffered, and continues to suffer, severe emotional distress and physical ailments.

51. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses and emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

52. As Defendant THE DEVEREUX FOUNDATION's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendant.

**AS A FIRST CAUSE OF ACTION**
**UNDER NEW JERSEY STATE LAW**
**RETALIATION**

53. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

54. New Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq.*, sets forth in

9

pertinent part as follows:

> "An employer shall not take any retaliatory action against an employee because the employee does any of the following: (c) [o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes…is in violation of a law, or a rule or regulation promulgated pursuant to law…"

55. Defendant engaged in an unlawful employment practice by retaliating against Plaintiff because she reported, disclosed and/or objected to or refused to participate in a practice of his employer which he reasonably believed to be a violation of law, rule or regulation.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that the Defendant engaged in unlawful retaliation prohibited by CEPA and unlawfully terminated his employment;

B. Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay and front pay, resulting from Defendant's unlawful retaliation;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

10

**WHEREFORE,** Plaintiff demands judgment against Defendant, in an amount to be determined at the time of trial plus interest, Punitive Damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: August 12, 2022
   New York, New York

           **Phillips & Associates, PLLC**
           *Attorneys for Plaintiff*

         By: */s/ Gregory Kirschenbaum*
           Gregory W. Kirschenbaum, Esq.
           Attorney ID #: 326942021
           45 Broadway, Suite 430
           New York, NY 10006
           (212) 248-7431